**NORTH DIXIE THEATRE,
INC., Plaintiff,**

v.

**Michael J. McCULLION, et
al., Defendants.**

No. C–3–82–389.

United States District Court,
S.D. Ohio, W.D.

June 10, 1985.

Robert J. Beggs, Jacob A. Myers, Dayton, Ohio, for plaintiff.

Douglas Anderson, William Pfeiffer, Asst. Attys. Gen., Columbus, Ohio, for defendants Dollison and Brown.

Terry Lewis, Pros. Atty., Kettering, Ohio for defendant Terry Lewis.

DECISION AND ENTRY OVERRULING DEFENDANT LEWIS' MOTION FOR RECONSIDERATION; DECISION AND ENTRY OVERRULING DEFENDANT LEWIS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT; DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DECISION AND ENTRY SUSTAINING DEFENDANT McCULLION'S MOTION FOR SUMMARY JUDGMENT; JUDGMENT TO BE ENTERED FOR BOTH DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, District Judge.

In this action, Plaintiff North Dixie Theatre, Inc. requests a Declaratory Judgment from this Court that Ohio Rev. Code § 4517.02(A)(6) violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment. This Court previously overruled the Motion for Summary Judgment (Doc. # 3) filed by Defendant Terry Lewis, the local prosecutor with the duty of enforcing § 4517.02(A)(6) and other relevant criminal statutes. *See* Doc. # 6. Subsequently, at a preliminary pretrial conference, the parties informed the Court that this case could be submitted on stipulations of fact and cross motions for summary judgment. *See* Doc. # 10. The Plaintiff and Defendant McCullion have submitted stipulations of fact (Doc. # 16) and cross

motions for summary judgment (Docs. # 18, # 19). Defendant Lewis has declined to join the other parties' stipulations, although he admitted to many in responding to Plaintiff's request for admissions. *See* Docs. # 13, # 25. Additionally, although the Court in its Pretrial Order (Doc. # 10) directed counsel to file motions for summary judgment which address the merits of Plaintiff's constitutional claims, Defendant Lewis has not filed such a motion. However, Defendant Lewis has filed a Motion for Reconsideration (Doc. # 14) in which he requests the Court to reconsider its Decision and Entry (Doc. # 6) overruling his Motion for Summary Judgment (Doc. # 3). Additionally, Lewis has filed a Supplemental Motion for Summary Judgment (Doc. # 23).

The Stipulations of Fact (Doc. # 16), between Plaintiff and McCullion, provide, in part, that:

1. Plaintiff North Dixie Theatre, Inc. is a corporation duly incorporated under the laws of the State of Ohio, with its principal place of business located in Harrison Township, Montgomery County, Ohio.

2. Defendant Michael J. McCullion is the Registrar of the Bureau of Motor Vehicles. The Bureau of Motor Vehicles is an agency of the State of Ohio which issues motor vehicles dealer's licenses pursuant to statute, and enforces the laws relating thereto.

.    .    .    .    .

4. Defendant Terry Lewis is the Prosecuting Attorney for the City of Vandalia, Ohio. He is sworn and empowered to prosecute all misdemeanors committed in Harrison Township, Ohio.

5. Plaintiff is the owner of real property located in Harrison Township, Montgomery County, Ohio. For the past twelve years Plaintiff has operated a flea market on said site, which consists of leasing space to persons who wish to sell items of personal property of every description that they own, similar to "garage sales."

6. On numerous occasions, patrons of Plaintiff have requested space be leased to them in said flea market in order to offer their private motor vehicles for sale. Said patrons are not in the business of dealing in motor vehicles and are specifically exempt from Ohio motor vehicles dealers' licensing requirements under Section 4517.02(A)(6).

7. Plaintiff has been forced to deny all requests from persons desiring to lease space to sell their own motor vehicles under threat of criminal prosecution by Defendants.

8. Under date of March 23, 1982, the then-Registrar of Motor Vehicles for the State of Ohio, Dean L. Dollison, wrote Plaintiff a letter (a genuine photocopy of which is attached to the Complaint as Exhibit B) stating that if Plaintiff obtained a motor vehicle dealer's license and did not obtain a certificate of title to each motor vehicle being offered for sale, pursuant to Section 4505.18(B), such motor vehicle dealer's license would be subject to revocation and Plaintiff would be subject to criminal charges for violation of Section 4505.18(B).

9. Section 4517.02(A)(6) of the Ohio Revised Code prohibits providing a space or location for the sale of motor vehicles at a flea market without obtaining a motor vehicle dealer's license.

10. Section 4505.18(B) of the Ohio Revised Code requires that a motor vehicle dealer obtain a certificate of title for any motor vehicle he displays for sale or sells.

11. During the customary operation of Plaintiff's business, Plaintiff does not obtain title to any of the property sold on its premises. Title at all times remains in the owners of the property, who merely lease space at Plaintiff's place of business for the purpose of selling such property.

12. Section 4517.03(C) of the Ohio Revised Code requires that a place of business that is used for selling or offering for sale motor vehicles shall be used exclusively for such purpose. Under such Section Plaintiff could not also operate a flea market without violating such Section.

13. Sections 4517.02(A)(6), 4505.18(B) and 4517.03(C), in conjunction, as interpreted and applied by the Ohio Bureau of Motor Vehicles, prohibit Plaintiff from leasing space to its patrons who wish to use said space to offer their motor vehicles for sale to the general public.

14. There is no statute in Ohio requiring the lessors of real property leased to persons engaged in the sale of motor vehicles to have a motor vehicle dealer's license, except persons operating flea markets.

15. There is no statute in Ohio requiring the Lessors of real property leased to persons engaged in the sale of motor vehicles, to also have title to each motor vehicle offered for sale, except persons operating flea markets.

16. Were it not for the Ohio Revised Code Sections cited in Plaintiff's Complaint, as interpreted and applied by the Ohio Bureau of Motor Vehicles, Plaintiff would no longer deny the right to lease space to individuals who wish to offer their private motor vehicles for sale at Plaintiff's "flea market" and would actively engage in the lease of space for such purposes.

17. There are licensed motor vehicle dealers in Ohio who lease the real property upon which they conduct their business as licensed motor vehicle dealers and the lessors of such property are not required to obtain a motor vehicle dealers' license.

18. Prior to enactment of Section 4517.02(A)(6), Plaintiff permitted its patrons to sell their privately owned motor vehicles at Plaintiff's flea market.

19. Plaintiff has no motor vehicles for sale.

20. A space or location may be provided by a flea market in Ohio to persons offering for sale their personal motor vehicles without the necessity of obtaining a motor vehicle dealer's license if the space is provided without a fee or compensation.

21. There is no record of any legislative history (committee reports, testimony, hearings, debate, etc.) addressing the enactment of Section 4517.02(A)(6) as it pertains to flea markets. The original bill did not contain any language concerning flea markets, but it was added prior to enactment.

This cause is now before this Court on the aforementioned motions, to wit: Defendant Lewis' Motion for Reconsideration (Doc. # 14), Plaintiff's Motion for Summary Judgment (Doc. # 18), Defendant McCullion's Motion for Summary Judgment (Doc. # 19) and Defendant Lewis' Supplemental Motion for Summary Judgment (Doc. # 23). The Court will discuss together the common issues raised by these motions. Initially, the Court will discuss the "defenses" to Plaintiff's claims which the Defendants raise in their motions. Then, assuming that no defense prevents it from doing so, the Court will turn to the merits of Plaintiff's constitutional claims.

## (A) Defenses

### (1) Eleventh Amendment

■ In his Motion for Summary Judgment (Doc. # 19), Defendant McCullion argues that this action is barred by the Eleventh Amendment. This assertion is without merit. An action, such as the present one, seeking a declaratory judgment and prospective injunctive relief against an officer of a state is not barred by the Eleventh Amendment. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

### (2) Abstention

Defendant McCullion also argues in his motion that this Court should abstain from exercising its jurisdiction herein. McCullion relies on two of the abstention doctrines, to wit: Pullman abstention as .set forth in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); and Burford abstention as set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

■ Abstention is a judicially created doctrine which is an exception to the grant of jurisdiction set forth in Article III of the United States Constitution. *Ada-Cascade Watch Co. v. Cascade Resource Recovery*, 720 F.2d 897, 901 (6th Cir.1983). "The doctrine permits federal courts to decline or postpone the exercise of jurisdiction so that a state court will have the opportunity to decide the matters at issue." *Id., citing Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Nonetheless, abstention is an exception to the "virtually unflagging obligation of federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. Moreover, abstention is to be narrowly construed, and it is justified only when "the order to the parties to repair to State court would clearly serve an important counterveiling interest." *Id.* at 813, 96 S.Ct. at 1244, *quoting, County of Allegany v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959).

■ As stated above, Defendant McCullion relies on two of distinct, yet related, doctrines of abstention, to wit: *Pullman* and *Burford*. *Pullman* abstention allows a federal court to stay the proceedings before it in order to provide state courts an opportunity to settle the underlying, unsettled questions of state law, thus avoiding the possibility of the Federal Court's unnecessarily deciding constitutional questions. *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975). *Pullman* abstention is a recognition that resolution of state law questions in state court may moot a federal constitutional claim. *Ada-Cascade*, 720 F.2d at 902. In *Harris County*, the Supreme Court emphasized:

Among the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law. If the state courts would be likely to construe the statute in a fashion that would avoid the

need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong.

420 U.S. at 84, 95 S.Ct. at 875–876.

■ Defendant McCullion's *Pullman* abstention argument is fatally flawed. He does not argue that construction of one or more of the statutes at issue herein would render Plaintiff's federal constitutional claims moot or otherwise significantly modify them. Indeed, McCullion does not even suggest which of the state statutes are in need of construction for lack of clarity. Also, McCullion does not offer any suggestions to the Court as to what it should order the parties to "repair to State court" to do. Under these circumstances, the Court cannot say that *Pullman* abstention would "clearly serve an important countervailing interest."

In *Ada-Cascade*, the Sixth Circuit discussed *Burford* abstention at some length.

The final category, of abstention, *Burford* abstention, derives its name from *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). There the Court upheld abstention where the "exercise of federal review of the [state law] question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation District*, 424 U.S. at 814, 96 S.Ct. at 1245. In *Burford*, the Texas legislature had centralized the administration of a regulatory scheme for oil and gas in one agency, with judicial review in a single state district court in Travis County, Texas. *Burford*, 319 U.S. at 325–26, 63 S.Ct. at 1103–04. The federal courts inconsistently interpreted state law which required a specialized knowledge of oil and gas matters. This resulted in uncertainty and confusion in the state's conservation program. The Court found that these circumstances justified abstention and dismissed the action. *Id.* at 324, 327–31 S.Ct. at 1102, 1104–06.

The *Burford* abstention, however, is not appropriate "merely because resolution of a federal question may result in the overturning of a state policy." *Zablocki v. Redhail*, 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 678 n. 5, 54 L.Ed.2d 618 (1978); *Colorado River Conservation District*, 424 U.S. at 815–16, 96 S.Ct. at 1245–46. The State must exhibit an overriding interest in the subject matter. *BT Investment Managers, Inc.*, 559 F.2d [950] at 955 [5th Cir.1977]. Additionally, the state must centralize review in a forum with special competence. *See Nasser v. City of Homewood*, 671 F.2d 432, 440 (11th Cir.1982). The key question is whether an erroneous federal court decision could impair the state's effort to implement its policy. *Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813, 820 (9th Cir.), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982); *BT Investment Managers, Inc.*, 559 F.2d at 955.

720 F.2d at 902.

In *Ada-Cascade*, the court applied *Burford* abstention and ordered the cause to be dismissed. Therein, the plaintiffs asserted that the construction of a toxic waste facility by the defendants violated the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* However, central to the resolution of this dispute was the question of whether the defendants had secured proper state permits. In reaching its conclusion that *Burford* abstention was required, the court noted that the state had an overriding interest in protecting the environment from the degrading effects of unregulated disposal of hazardous wastes which was manifested in a "vigorous and complex administrative procedure for the approval of construction of hazardous waste facilities." 720 F.2d at 904. The court reasoned that federal courts are ill-equipped to review such state administrative rules and regulations and that to do so would result in unnecessary and disruptive interference with the state's attempt to deal with the problem of hazardous waste in a coherent fashion.

■ It is readily apparent that *Ada-Cas-cade* and *Burford* abstention is inappropriate to the present case. This Court has not been called upon to resolve complex questions of Ohio administrative law. Rather, Plaintiff seeks a declaration from the Court that certain Ohio statutes violate equal protection and due process. *Burford* abstention does not insulate a state statute from federal constitutional challenge when, as herein, there is no issue of state law to be resolved.

### (3) *Failure to Exhaust Administrative Remedies*

■ Defendant McCullion argues that the Court should dismiss the complaint herein because Plaintiff failed to exhaust its administrative remedies. McCullion argues that Ohio Rev.Code § 119.06 provides Plaintiff with an administrative hearing in the event that his application for a license is rejected. McCullion concludes that since Plaintiff has not applied for a license, it has not exhausted the administrative remedies which are available to it.

This Court does not agree. In making this argument, McCullion fundamentally misconstrues the nature of Plaintiff's complaint. Plaintiff does not challenge the procedures by which it might obtain a license, nor does it assert that the state is in some manner prohibiting it from obtaining a license. Rather, Plaintiff's constitutional challenge is much more basic. Plaintiff contends that the very requirement that it obtain a license violates due process and equal protection. Under these circumstances, the availability of an administrative remedy to Plaintiff, in the event that it applied for a license and was refused, is of little relevance.

### (4) *Lack of a Case or Controversy*

■ Both Defendants argue that there is not a case or controversy, within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, between the parties herein. McCullion argues that there is no case or controversy because Plaintiff has declined to apply for a license. Further-

more, both Defendants argue that there is not a case or controversy because Defendant Lewis has said that he would not prosecute Plaintiff under the facts alleged. *See* Doc. # 14.

Under the facts presented by this case, the Court is forced to disagree. In the Decision and Entry of October 12, 1983 (Doc. # 6), overruling Defendant Lewis' Motion for Summary Judgment (Doc. # 3), this Court discussed the principles which govern the determination of whether a case or controversy exist for purposes of granting declaratory relief. There is no need to repeat, exhaustively, those standards herein. The overriding precept is that federal courts may not give advisory opinions, whether in the context of a request for a declaratory judgment or otherwise. In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), the Supreme Court set forth the familiar standard for determining when a declaratory judgment action presents an actual, live controversy:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Id.* at 273, 61 S.Ct. at 512.

Herein, the Court is firmly convinced that the facts and circumstances demonstrate a substantial controversy between parties having adverse legal interests. Plaintiff has operated its flea market for many years and has rented space to customers so that they could sell their automobiles. When the Ohio General Assembly enacted Ohio Rev.Code § 4517.02(A)(6), it became impossible for Plaintiff to do so

without risking criminal prosecution. Plaintiff's customers continue to request space to sell their automobiles but Plaintiff is forced to decline all requests because of § 4517.02(A)(6). The fact that Plaintiff has not sought a license does not mean that this case is not an actual, live controversy, because Plaintiff challenges the requirement that it obtain a license rather than the procedure by which one might be obtained.

Furthermore, the Court does not accept Defendant Lewis' assertion that he would not prosecute Plaintiff under the facts of this case. Lewis bases this on his reading of the statute and Ohio cases. However, he declines to inform the Court as to precisely what statutes and cases underlie his conclusion. Courts have said that where there is no risk of prosecution, no case or controversy exists. *See, e.g., Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (plurality opinion) (Eighty year history of not enforcing criminal statute destroys case or controversy); *C.I.O. v. McAdory*, 325 U.S. 472, 65 S.Ct. 1395, 89 L.Ed. 1741 (1945) (Explicit agreement between parties not to enforce a criminal statute pending outcome of analogous litigation destroys case or controversy). Herein, there is no such explicit agreement not to prosecute, nor has the Court been shown a long history of non-enforcement of the relevant statutes. On the contrary, Defendant McCullion asserts that if Plaintiff rents space to its patrons to sell their automobiles, it will be subject to criminal sanctions. Moreover, Lewis' assertion that there is no case or controversy because he will not prosecute rings hollow in light of his subsequent contention that it is the Montgomery County Prosecutor, and not he, who has ultimate responsibility for prosecution of offenses occurring in Harrison Township, the jurisdiction wherein Plaintiff operates its flea market. *See* Doc. # 23.

Accordingly, the Court concludes that an actual controversy, as opposed to an abstract question, is presented herein. In so doing, the Court hereby overrules Defendant Lewis' Motion for Reconsideration. (Doc. # 13).

(5) *Failure to Join Necessary Parties*

██ Defendant Lewis, in his Supplemental Motion for Summary Judgment (Doc. # 23), seeks dismissal of Plaintiff's Complaint because Plaintiff failed to join the Montgomery County Prosecutor, the Montgomery County Sheriff's Department and the Ohio State Highway Patrol. Lewis contends that each of these agencies has enforcement power over the statutes which Plaintiff would have the Court enjoin. Thus, Lewis asserts that Fed.R.Civ.P. 19(a)(1) requires their joinder.

Initially, the Court notes that Lewis does *not* argue that any of these enforcement agencies is an "indispensible" party under the terms of Rule 19(b). While the Court does not dispute Lewis' contention that the enforcement agencies are "persons to be joined if feasible," Rule 19(a), the Court will overrule this motion, because Lewis waived his right to present it by not presenting it in his initial motion.

Rule 12(b)(7) provides that the defense of failure to join a party under Rule 19 may be asserted by motion. In the present case, Defendant Lewis filed a motion prior to serving his answer. *See* Doc. # 3. Lewis did not raise this defense of failure to join parties in that motion. Moreover, Defendant Lewis did not raise the defense in his answer, which was filed after the Court overruled his initial motion. Rule 12(g) provides that when a party asserts a defense before answering a complaint, that party must assert all defenses which can be raised by motion under Rule 12(b) or the defenses are waived. *See also* Rule 12(h)(1). Although Rule 12(h)(2) preserves an *indispensible* party objection, this provision does not apply to persons who are merely necessary parties under Rule 19(a). *See* 7 Wright & Miller, *Federal Practice and Procedure*, § 1609. As stated above, Lewis does not argue that any of the enforcement agencies is an indispensible party within the meaning of Rule 19(b). Rather, he argues that they are "necessary parties" within the meaning of Rule 19(a).

Accordingly, the Court hereby overrules Defendant Lewis' Supplemental Motion for Summary Judgment. (Doc. # 23).

### (6) *Summary*

The Court has addressed and rejected each of what the Court calls "defenses" to the Plaintiff's constitutional arguments. The Court now turns to the merits of the Plaintiff's claims.

### (B) *The Merits of the Plaintiff's Claims*

In its Motion for Summary Judgment (Doc. # 18), Plaintiff argues that Ohio Rev. Code § 4517.02(A)(6) deprives it of equal protection and due process guaranteed by the Fourteenth Amendment to the United States Constitution. In his Motion for Summary Judgment (Doc. # 19), Defendant McCullion contends that § 4517.02(A)(6) works no constitutional deprivation upon the Plaintiff. Defendant Lewis has not filed a motion for summary judgment addressing the Plaintiff's constitutional claims despite being directed by the Court to do so. *See* Doc. # 10. Accordingly, the Court will treat Lewis as having joined that motion filed by Defendant McCullion. The Court will discuss Plaintiff's equal protection challenge which will be followed by a discussion of Plaintiff's due process claim.

### (1) *Equal Protection*

In this claim, Plaintiff argues that § 4517.02(A)(6) deprives it of equal protection for the reason that said statutory section requires Plaintiff to obtain a license because he rents space to people wishing to sell their automobiles; whereas, a person who leases real property to a car dealer is not required to obtain such a license. McCullion argues that the distinction is rationally related to a legitimate state purpose.

■■■ Ohio has classified persons who lease property to others for the purpose of selling automobiles thereon into two categories: those, such as Plaintiff, who operate flea markets and those who do not. Only those who operate flea markets are required by § 4517.02(A)(6) to obtain licens-es. The later group is not subject to a similar requirement. However, this legislative classification neither impinges upon a fundamental right, nor does it create a suspect class. Accordingly, to survive Plaintiff's equal protection challenge, the classification need only be rationally related to the achievement of a legitimate governmental purpose. *G.D. Searle & Co. v. Cohn,* 455 U.S. 404, 408, 102 S.Ct. 1137, 1141, 71 L.Ed.2d 250 (1982). *See also Salibra v. Supreme Court of Ohio,* 730 F.2d 1059, 1063 (6th Cir.1984) (such a classification "need only have a reasonable basis to pass constitutional muster."). *Dillinger v. Schweiker,* 762 F.2d 506 (6th Cir.1985). Moreover, statutory classifications which deal with economic matters, such as the one herein, "need not be drawn so as to fit with precision the legitimate purposes animating it." *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 813, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976). Furthermore, that Ohio "might have furthered its underlying purpose more artfully, more directly, or more completely, does not warrant a conclusion that the method it chose is unconstitutional." *Id.* The burden is not on the Defendants to show that the classification under consideration is rational; rather, the burden is on the Plaintiff to establish that the classification is wholly arbitrary. *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364–65, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973).

■■■ Herein, Plaintiff concedes that the licensure requirement was passed for the broad purpose of preventing fraud in the sale of automobiles. *See* Doc. # 18. This is a legitimate state purpose. Additionally, this Court is of the opinion that the classification devised is rationally related to that goal. While the person who leases real property to a car dealer is not required to obtain a license, the dealer himself will be required to have such a license. *See* Ohio Rev.Code § 4517.02(A). On the other hand, although Plaintiff must obtain a license, his patrons are not required to obtain licenses. *Id.* Thus, in each situation, one party is required to be licensed. More-

over, there is a real and substantial difference between the lease of property to a car dealer and the business in which Plaintiff engages. It is the dealer, rather than the lessor, with whom the customers will deal. The dealer will have the long-term presence so that customers can return to them if the need arises. However, with a flea market, one of Plaintiff's patrons will sell his or her car and be gone. Plaintiff is the only long-term presence to whom a customer may be able to look. Thus, the State of Ohio requires a licensing of the party to each lease arrangement who will be available for the purchaser of a car to look to for satisfaction. Therefore, the Court concludes that there is a rational basis to support Ohio's classification. In other words, there is a rational relationship between the means chosen and the desired end, the prevention of fraud in the sale of automobiles.[1]

### (2) Due Process

Plaintiff argues that § 4517.02(A)(6) deprives it of *substantive* due process for the simple reason that when read in conjunction with §§ 4505.18(B) and 4517.03(C), the statutory section under discussion irrationally and arbitrarily prohibits him from leasing space to patrons for them to sell their cars. Plaintiff buttresses his argument that § 4517.02(A)(6) is irrational and arbitrary by pointing out that Ohio does not prohibit flea markets and that it does not prohibit individuals from selling less than six cars a year, as long as they do not make the sales at flea markets.

■ When faced with a substantive due process challenge to a statutory scheme which regulates the economic sphere, courts must remember that they do not sit as super-legislative bodies passing upon the wisdom of legislative enactments. *Hodel v. Indiana,* 452 U.S. 314, 333, 101 S.Ct. 2376, 2388, 69 L.Ed.2d 40 (1981). Moreover, in *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49

L.Ed.2d 752 (1976), the Supreme Court reiterated that:

It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.

*See also, Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–465, 99 L.Ed. 563 (1955); *United States v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). To overcome this presumption of constitutionality, the person challenging the statutory scheme must prove that there is no rational relationship between a legitimate government purpose and the means by which the government has sought to further those goals. *See, e.g., West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

■ Applying these principles to the present case, the Court concludes that the statute under scrunity herein does not violate substantive due process. Without question, the state's interest in the prevention of fraud is a legitimate one. This, Plaintiff concedes. Moreover, there is nothing in the record before this Court that would tend to show that the means chosen by Ohio, the practical prohibition on the sale of automobiles at flea markets, is not reasonably related to Ohio's goal, the prevention of fraud in the sale of automobiles. On the contrary, it is apparent that the potential for fraud exists in flea market sales. Plaintiff's patrons, those who sell automobiles, will make their sales and be gone. It is quite possible that a purchaser will have no one to whom to look to when problems arise.

Based upon the foregoing, the Court concludes that the statutory scheme under consideration herein violates neither the

---

1. Additionally, the Court concludes that Plaintiff has not met its burden of showing that the classification created by § 4517.02(A)(6) is wholly arbitrary. On the contrary, the stipulation of facts contain absolutely *no* evidence that § 4517.02(A)(6) is arbitrary in whole or in part.

equal protection nor the due process clauses of the United States Constitution. Therefore, the Court overrules Plaintiff's Motion for Summary Judgment (Doc. # 18), and sustains Defendant McCullion's Motion for Summary Judgment (Doc. # 19). The Clerk is directed to enter judgment for *both* Defendants and against the Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.